CLERKE, J., expressed no opinion.

---

## FAIRCHILD a. GWYNNE.

*Supreme Court, First District; General Term, May,* 1863.

CONSTRUCTION OF STATUTES.—ACKNOWLEDGMENT OF ASSIGNMENT
FOR BENEFIT OF CREDITORS.

À general assignment for the benefit of creditors not acknowledged or proved, as
    required by the Laws of 1860, ch. 348, § 1, is void.
Where the object of a statute is the correction of an abuse, the intention of the
    Legislature, as gathered from contemporaneous circumstances, should govern
    its construction in cases of ambiguity.

Appeal from a judgment.

This action was brought by Frederick Fairchild, as receiver of Thomas Gwynne, a judgment-debtor, appointed in proceedings supplementary to execution, to set aside as fraudulent a

general assignment made by the judgment-debtor. The defendants were John A. and Thomas Gwynne. The complaint set out the assignment, dated May 1, 1860, and alleged that it was made with intent to hinder, defraud, and delay creditors; that the assignor continued in possession of assigned property, that the assignment was not acknowledged before delivery, nor recorded, nor was any bond or inventory filed, as required by Laws of 1860, ch. 348, that the assignee had not sold the assigned property nor collected any of the debts, and prayed that the assignment be adjudged fraudulent and void as against creditors. The answer denied all the allegations of fraud; alleged that the assignment was made in good faith; that the assignee took possession of the assigned property and retained the same from the time of making the assignment; that he had converted the same into money so far as practicable; had paid the preferred creditors, and still retained the balance of the proceeds, and always had been and still was ready to account for the whole of said assigned property; that the assignment was proved by the subscribing witness thereto, before a commissioner of deeds, before the commencement of this action, and that since the commencement of said action the said assignment had been duly acknowledged by the parties thereto, and recorded in the office of the clerk of Kings county, and the bond and inventory required by the act had been filed. The cause was tried before Mr. Justice Clerke at special term, who rendered his decision directing judgment for the defendants without costs. The case is reported 14 *Ante,* 121. The plaintiff appealed. The plaintiff having died, Moses B. Maclay was duly appointed receiver in his place since the last term of the court, and the action was continued in the name of Maclay as receiver.

*James R. Hills,* for the appellant.—I. The assignment was fraudulent in fact, and the whole conduct of the parties shows an intent to defraud the creditors of the assignor. The assignee's firm is preferred for three-fourths the assets of the assignor. The assignor was permitted by the assignee to continue in possession of the property assigned—to manage and dispose of the same—and the stock was retailed as usual till after the present suit was brought. Such conduct has ever

been adjudged fraudulent, and the interests of the creditors were liable to be affected injuriously by the assignor's position in relation to the assigned estate. (Browning a. Hart, 6 *Barb.*, 91 ; Bank of Orange County a. Fisk, 7 *Paige*, 87 ; Jackson a. Cornell, 1 *Sandf. Ch.*, 348; 20 *Wend.*, 507; *Edw. on Receivers*, 408–430.) The assignment was kept as secret as possible. Every provision of the act of 1860 was violated, and that violation continued till January, 1861. This violation of a known law, continued in, and which is unexplained, is conclusive evidence of a fraudulent intent, and no other construction can be put upon the acts of the parties.

II. The assignment in question was delivered May 2, 1860. This act of 1860 was to take effect immediately. The act in question was violated in every respect by the assignor and the assignee. This act is a universal affirmative statute, which plainly prescribes the only rule to be followed in making assignments, and necessarily implies a negative, viz., that no assignment shall be made otherwise. (*Plowd.*, 206, *b.*) It is to be regarded as imperative, and such was the obvious intention of the Legislature. The language used is stronger, though similar to that of 2 Rev. Stat., 93, § 33, relating to wills, which is also a universal affirmative statute, and which altered the previous law, allowing a will to be signed by the testator at the beginning of the will, and made it a pre-requisite that the testator subscribe the will at the end of the will. The language of the Statute of Wills has always been adjudged imperative; and wills that are not executed in conformity with the rule prescribed by statute are held void. (1 *Barb.*, 531 ; 2 *Ib.*, 202; 10 *Paige*, 86, 91 ; Remsen a. Brinkerhoff, 26 *Wend.*, 331 ; 6 *N. Y.*, 120 ; Hoysradt a. Kingman, 22 *Ib.*, 375–379.) The provisions of the Code in regard to confessions of judgment (*Code*, §§ 382, 383) are in affirmative language. Yet these provisions have been adjudged imperative, and a statutory limitation that the act shall not be done otherwise. (12 *N. Y.*, 219 ; 17 *Ib.*, 13.) The language adopted by the Legislature was such as indicated a design to make the act imperative, and language that had been adjudged such in similar cases. Here is a necessary conflict. The statute is universal, and applies to all assignments. "Where the common law and the statute differ, the common law must give way to the statute." (1 *Black. Comm.*, 62, § 7.)

The great object of the maxims of interpretation is to discover the true intention of the law, and whenever that intention can be indubitably ascertained, and it be not a violation of constitutional right, the courts are bound to obey it, whatever may be their opinion of its wisdom or policy. (1 *Kent's Com.*, 468; 4 *Nev. & Mann.*, 426; 24 *Wend.*, 45; *Bac. Abr.*, Statute I., 5; 4 *N. Y.*, 144.) When there is an intent on the part of the Legislature to change the law, that will be conclusive. (2 *Cai. Cas.*, 151; 4 *Johns.*, 359; 21 *Wend.*, 316.) Where a law is plain and unambiguous, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. (2 *Cranch*, 386–399; *Bac. Abr.*, Statute I., 2.) This statute being inconsistent with previous common-law rule, repeals it by implication. (Bowne a. Dease, 5 *Hill*, 221.) A subsequent act, repugnant to a prior one, repeals it, so far as such repugnancy exists. (Dexter Plank-road Co. a. Allen, 15 *Barb.*, 15; Davis a. Fairbanks, 3 *How. U. S.*, 636.) This assignment was not acknowledged before delivery, it is defective, and has no validity as an instrument. (26 *Wend.*, 331; 10 *Paige*, 91; Commonwealth a. Herrick, 6 *Cush.*, 465; Pray a. Edie, 1 *Term R.*, 313.) The rule laid down by Lord Coke was, "A statute made in the affirmative, without any negative, express or implied, does not take away the common law." (1 *Inst.*, 209.) Not that an affirmative statute does not take away the common law. (See *Notes Harg. & B.*, 3 *Inst.*, 170, 8, 9, 14, as to implied negative.) But a universal affirmative plainly prescribing the only rule to be followed does · imply a negative, "that the thing shall not be done otherwise." (*Plowd.*, 206 *b*.) The act of 1860 is a remedial statute, and should be construed liberally where the rights of creditors are concerned (*Bac. Abr.*, Statute I., 8 and 5); and in such a manner as will tend to make the statute effectual for the prevention of fraud. Such construction should be also put upon the act as does not suffer it to be eluded. (2 *Cranch*, 272; 3 *Cai.*, 68–69; People a. Utica Ins. Co., 15 *Johns.*, 358; *Ib.*, 89; 19 *N. Y.*, 433; Cook a. Kelly, 12 *Abbotts' Pr.*, 36, affirmed on appeal; *Hobart*, 298.)

III. The title of the act of 1860 shows that it was passed for the benefit of creditors, and does not control the plain words in the body of the statute. The Constitution requires that the title

of the act shall express the subject. And it is no objection to the title of a statute that it is vague or unmeaning as to its purpose, if it is sufficiently distinct as to the matter to which it refers. (36 *Barb.*, 177.) "The title of an act of parliament is no part of the law, or enacting part, no more than the title of a book—for the title is not the law, but the name or description given to it by the makers." (6 *Mod.*, 62; *Bac. Abr., Statute I.*, 2; 1 *W. Black.*, 95; 1 *Kent's Com.*, 450; see, also, United States *a.* Fisher, 2 *Cranch*, 386; 1 *Wheat.*, 326; 1 *Kent's Com.*, 462.)

IV. The fact that the assignment was proved by the subscribing witness in June, 1860, does not better the condition of the defendants. This statute was intended to prevent secret assignments, and the parties were required to acknowledge the instrument before a public officer in order to have it effectual. Whatever may have been the reasons that induced the Legislature to pass the act in the form they did, the act is plain, and the court has no interpretation to put upon plain words that require the due acknowledgment of the instrument before its delivery. (2 *Cranch*, 386; 1 *Kent's Com.*, 462, 468; 10 *Paige*, 91.) This is especially the case when a preferential assignment like this is involved (17 *N. Y.*, 24), which is not favored in equity.

V. A review of the opinion at special term will show that the cases cited do not even support the proposition that an affirmative statute never takes away the common law. The proposition of Lord Coke is, "that an affirmative statute without a negative, express or implied, does not take away the common law." But when the statute limits a thing to be done in a particular form, it includes in itself a negative (*Plowd.*, 206, *b*), and the established law in this State is, that if the later statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the prior one. (3 *How. U. S.*, 644, 646; 16 *Barb.*, 15; 5 *Hill*, 221; 10 *Paige*, 91.) The error in the opinion consists in not distinguishing between cases of partial affirmative and universal affirmative.

VI. The title of the receiver dates back to the proceedings supplementary, as suit was immediately instituted. (16 *N. Y.*, 543.) As the assignee cannot take advantage of his own wrong,

only those payments made in good faith to third parties, before the proceedings supplementary, are to be protected. (7 *Johns. Ch.*, 174; 4 *Paige*, 23; 5 *Ib.*, 13; 6 *Ib.*, 577; 6 *Barb.*, 470.)

*Theodore F. Jackson*, for the respondents.—I. There is nothing on the face of the assignment or in the conduct of the parties to affect its validity. The evidence clearly shows that the parties acted in good faith, and sustains the finding of the court upon the question of fact.

II. The act of 1860 had not taken effect when the assignment in question was made. (1 *Rev. Stat.*, 127, § 12.) The word "immediately," in the act in question does not prescribe a different time, but has reference to the time fixed by the general statute above referred to, *i. e.*, immediately upon the expiration of the time specified therein. In this case the parties were in fact ignorant of the existence of this law when the assignment was made.

III. The act of April 13, 1860, is merely directory, and a neglect to comply with its requirements in relation to the acknowledgment of an assignment, does not render the instrument void. 1. The object of the act is declared by its title. It simply calls upon the debtor to do certain acts, the only effect of which is to apprise the parties interested of the condition of the debtor's affairs, and to afford the *cestui que trust* security for the due performance of the assignee's duties, and a summary method of compelling him to account. 2. The right to make any disposition of his property which does not interfere with the existing rights of others, is a consequence of that absolute power which a man possesses over it; and such disposition, if it be fair and real, will be valid. The limitations on this power are those only which are prescribed by law. (Sexton *a.* Wheaton, 8 *Wheat.*, 229, 242.) Thus, as an abstract principle, there is no doubt of the right of a man to make preference of creditors. (Waterbury *a.* Sturtevant, 18 *Wend.*, 358.) The statute in relation to wills cited by plaintiff is an argument in favor of our position, that an affirmative statute does not take away the common law. Wills are the creation of statute law, and were unknown to the common law. They have always been the subject of statute regulation, and derive all their force from the statutes authorizing them. (See 2 *Black. Com.*,

10–12.) 3. The act in question is throughout in the affirmative, contains no words of prohibition, no negative words, and imposes no penalty or forfeiture for a non-compliance with its provisions. It cannot therefore take away the common-law right of the assignor to dispose of his property for the benefit of his creditors, (2 *Coke Inst.*, 200 ; Rex *a.* Sparrow, *Strange*, 1123 ; Rex *a.* St. Nicholas, *Ib.*, 1066 ; Pearce *a.* Morris, 2 *Ad. & E.*, 96 ; Rex *a.* Justices of Leicester, 7 *B. & C.*, 12 ; Rex *a.* Inhabitants of Birmingham, 8 *Ib.*, 34 ; Gwynne *a.* Burnell, 2 *Bing. N. C.*, 39 ; Thames Haven Dock & Railway Co. *a.* Rose, 4 *Man. & Gr.*, 552 ; Southampton Dock Co. *a.* Richards, 1 *Ib.*, 448 ; Wood *a.* Chapin, 13 *N. Y.*, 521, 526 ; Cole *a.* Green, 7 *Scott N. R.*, 682 ; Jackson *a.* Bradt, 2 *Cai.*, 169 ; *Exp.* Heath, 3 *Hill*, 51 ; People *a.* Cook, 10 *N. Y.*, 89, and cases cited ; S. C., 14 *Barb.*, 290 ; Jackson *a.* Young, 5 *Cow.*, 269 ; *Dwarris on Statutes*, 638.) 4. This act is not "introductive of new laws" in such a sense as to bring it within the exception cited by Judge Hilton in Cook *a.* Kelly (12 *Abbotts' Pr.*, 36), to the maxim quoted in the last subdivision under this point. 5. The acknowledgment of the assignment is not by the act made a condition precedent to the taking effect of the assignment. The provision of the statute in relation to acknowledgments of grants of land, &c. (1 *Rev. Stat.*, 737, § 137), is in substantially the same language, requiring either an acknowledgment "previous to delivery," or the signature of an attesting witness ; and in Wood *a.* Chapin (13 *N. Y.*, 514, 522), a deed which was neither acknowledged nor attested by a subscribing witness was held to be good. 6. Again, the time of making the acknowledgment is not of the essence of the thing required to be done. It was sufficient that the instrument was acknowledged at any time before it was recorded, and no person could be prejudiced by the neglect to do so at an earlier date. The act is therefore directory as to the time of acknowledgment. (Cases cited under subdivision 3, *supra ;* Sears *a.* Burnham, 17 *N. Y.*, 445.) 7. It must be apparent that if the first section of the act is directory, the subsequent ones must be so. 8. The intention of the Legislature in passing this act does not come in question. There is no ambiguity or uncertainty as to what the Legislature intended to require. The authorities cited by

the plaintiff (15 *Johns.*, 358, &c.) have no bearing upon the case.

IV. The proof of the instrument by the subscribing witness in June, 1860, was a substantial compliance with the require-ments of the act, and the assignment took effect at that time, if not before. The object of the acknowledgment could only be to authenticate the execution of the instrument, and to enable it to be recorded, and the legal effect of the proof is precisely the same. The maxim *de minimis non curat lex*, applies to this case.

V. If the assignment ever took effect at all, it must be ap-parent that the plaintiff in this case has mistaken his remedy. The title to the property having passed to the assignee, there was nothing that could be reached by a receiver in supplemen-tary proceedings. The only remedy was for the judgment-creditor to bring his action in his own name, as one of the *cestuis que trust* under the assignment, to compel the assignee to give the security, and to account and perform the trust, or remove him.

MULLEN, J.—Before the passage of the act of 13th April, 1860, entitled " an act to secure to creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors," an assignment by a debtor of his property to an assignee in trust for creditors, might, under certain circumstan-ces, have been made without writing, or, if in writing, need not have been acknowledged before any officer before delivery to the assignee, in order to be valid and effectual, to accomplish the purpose intended. These acts are for the first time required by the act above referred to, and the only question of law presented by the appeal is, whether this statute is to be con-strued as avoiding an assignment not made in conformity to its provisions, or whether it is directory merely, leaving it dis-cretionary with the parties to conform to the statute or to dis-regard it at their pleasure.

Voluntary assignments by insolvent debtors for the benefit of creditors, in and by which certain creditors, or classes of creditors, have been preferred over other creditors or classes, have not been favored instruments in the courts, nor have business men looked upon them without suspicion. The secrecy with

Fairchild *a*. Gwynne.

which they might be made—the facility they afforded to fraud—the unjust preferences they secured, required that they should be watched with the greatest vigilance, and scrutinized with the greatest care. It was in the power of the debtor and his assignee to put forward one of these instruments at such time as should most effectually give effect to their own purposes—to ante or post date it—to consider it as delivered or not delivered—to alter the schedules—to increase or lessen the number of preferred creditors—to prefer a friend or non-prefer an enemy—to increase or lessen the amount of property to be passed under the assignment—these and other fraudulent and dishonest acts might have been done without any opportunity being afforded to the creditors to prevent or punish them.

It was to prevent these abuses that the act of the 13th April, 1860, was passed. That act requires the assignment to be in writing, and to be acknowledged before an officer authorized to take the acknowledgment.

It is quite clear that if this statute is to be construed as directory, that it is a mere nullity—no abuse is corrected—no one is protected—it amounts to nothing—accomplishes nothing. It is hardly respectful to the Legislature to hold that it would pass through the forms of legislation an act which it knew was to be obligatory only at the will of the citizen—to be obeyed or disobeyed, as each person should deem most conducive to his own interest.

There was an evil to be remedied, and it could only be remedied by a law requiring the persons to be affected by it to conform to its provisions, or their acts would be void. That the Legislature intended to make this statute mandatory I have no doubt, and I am equally clear that it is our duty so to construe it.

I do not think that an investigation of the rules by which to determine whether a statute is mandatory or directory, will aid us in arriving at a construction of the statute in question. The question here is one of legislative intent, to be derived from the circumstances under which the act was passed. We know there was an evil to be remedied—that this statute was intended to have remedied it, in a degree—effect cannot be given to such intent by considering the statute directory, but can be only by holding it to be mandatory.

I know of no case in which it has been held that a statute enacted to remedy an abuse was directory.

There are cases in which it is held that when a duty is imposed on a public officer, in which the public have an interest, and a time is limited within which it is to be performed, or a manner prescribed in which it is to be done—that the act may be done after the time limited in the statute, or in a manner different from that prescribed—the statute in such case being directory. The reason of the rule in such cases being, that the act being for the benefit of the public, conformity to the precise time and manner indicated in the statute is not exacted, because the Legislature is to be presumed to intend that the act should be done, and the time and manner of doing it are of no materiality.

There is no distinction in principle between this act and that of the act relating to the execution of wills; substantial conformity to its provisions is required, or the will is void. Yet there are in the statute no mandatory words, no provision that the will is void if not executed in conformity to it. It is substantially like the act under consideration.

It is said that the act relating to wills is held to be mandatory, because at common law a person had no power to make a last will, and as that right is given by statute, the provisions of the statute, as to the manner of execution, must be complied with.

This is equivalent to saying that when the Legislature grants a new right, gives a new remedy, or imposes a new duty, the provisions of the statute are peremptory. The proposition is not correct in regard to each of the classes of cases enumerated, and, indeed, the only rule which can be laid down is, that the question is one of intention, and when the intention is ascertained it must have effect. The cases in relation to the construction of statutes, lay down rules by which courts may be guided in ascertaining the intentions of the Legislature. But when that case is obvious, no cases, nor principles to be drawn from cases, can justify a court in refusing to give it effect.

I am of opinion that the judgment of the special term should be reversed, on the sole ground that the assignment, not having

been executed and acknowledged in compliance with the statute, is utterly void.

SUTHERLAND, P. J., concurred.

CLERKE, J., dissented.